RECEIVED VIA MAIL
FILED VIA MAIL
DEC 19 05
CLERK, U.S. BANKRUPTCY
COURT FT LAUDERDALE FL

no fee required filed by DB's

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:

BARRY MICHAEL KORNFELD, CASE NO.: 02-29360-BKC-PGH
Chapter 7

Debtor.
_______________________________/

BARRY MICHAEL KORNFELD,

Plaintiff,

vs Adv. Pro. No.:

STEVEN GOLDSTEIN and
JANET GOLDSTEIN,

Defendant.
_______________________________/

**COMPLAINT BY DEBTOR TO DETERMINE DISCHARGEABILITY OF DEBT WHERE CREDITORS OMITTED FROM SCHEDULES**

COMES NOW the Plaintiff, BARRY MICHAEL KORNFELD (the "Plaintiff"), by and through his undersigned counsel and pursuant to 11 U.S.C. § 523(a)(3) files this Complaint against the Defendants, STEVEN GOLDSTEIN and JANET GOLDSTEIN (the "Goldsteins") and alleges as follows:

1. This is a core proceeding over which this Court has jurisdiction under 28 U.S.C. § 157(b).

2. Plaintiff is the Debtor in this Chapter 7 case. The Goldsteins are creditors of the Plaintiff.



FURR AND COHEN, P.A. • ONE BOCA PLACE, SUITE 337W • 2255 GLADES ROAD • BOCA RATON FLORIDA 33431 • (561) 395-0500

3. This is an adversary proceeding to determine the dischargeability of a debt.

4. Plaintiff commenced this Chapter 7 case on December 10, 2002.

5. Plaintiff listed all of his clients as creditors in his bankruptcy schedules.

6. On July 29, 2003, this Court entered its Order Discharging the Plaintiff (the "Discharge Order") (C.P. # 61).

7. Plaintiff recently received a Statement of Claim filed against him known as *NASD Dispute Resolution Case Number 05-04437, Steven and Janet Goldstein vs. PacVest Associates, Inc., Advisors Capital Investments, Inc., Barry Kornfeld, et al.*, a copy of which is attached hereto and incorporated herein as Exhibit "A".

8. The alleged actions as set forth in the Statement of Claim took place prior to the time that the Debtor filed for Chapter 7 protection.

9. The Statement of Claim does not set forth any basis for the alleged debt to be deemed nondischargeable under 11 U.S.C. § 523.

10. Plaintiff was not aware that the Goldsteins were or could possibly be creditors of his because they were his partner's customers.

11. If the Plaintiff had been aware that a claim by the Goldsteins existed, he would have listed them on his original creditor list as creditors and the debt would have been discharged pursuant to the Discharge Order.

WHEREFORE, Plaintiff, BARRY MICHAEL KORNFELD requests that the Court enter an Order determining that the debt owed by the Plaintiff to the Defendants, STEVEN GOLDSTEIN and JANET GOLDSTEIN as aforesaid is discharged and for such other and further relief as this Court

deems just and proper.

Dated this 15 day of December, 2005.

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

FURR AND COHEN, P.A.
Attorneys for Plaintiff
2255 Glades Road
One Boca Place, Suite 337W
Boca Raton, FL 33431
(561) 395-0500
(561)338-7532-fax

By ______________________
MARK S. ROHER
Florida Bar No. 0178098
EMAIL mroher@furrcohen.com

H:\LIBRARY\BANKRUPTCY\Kornfeld Barry 02-429\PLD\Adversary Complaint Goldstein - REVISED.wpd

**BE**ORE **NASD DISPUTE RESOLUTIO**

**In the Matter of the Arbitration Between:**

**CASE NO.**

STEVEN AND JANET GOLDSTEIN,

**CLAIMANTS**

vs.

PACVEST ASSOCIATES, INC.,

ADVISORS CAPITAL INVESTMENTS, INC.,

BARRY KORNFELD,

ROBERT MANN,

**RESPONDENTS.**

________________________________/

## STATEMENT OF CLAIM

Pursuant to the Rules of NASD Dispute Resolution, Steven and Janet Goldstein[1] (at times also referred to as "Claimants") submit this claim against Pacvest Associates, Inc. **(CRD #29583)** (at times also referred to as "Pacvest" or "Respondent"), Advisors Capital Investments, Inc **(CRD #104811)** (at times also referred to as "Advisors Capital" or "Respondent") and their employee/agent/financial advisors Barry Kornfeld **(CRD #1490377)** (at times also referred to as "Kornfeld," "the financial advisor" or "Respondent") and Robert Mann **(CRD #318870)** (at times also referred to as "Mann," "the financial advisor," "the control person" or "Respondent"). Respondents engaged in

[1] Claimants are the beneficial owners and/or have authority to bring this action on behalf of all accounts held with Respondent. Claimants' standing to bring these claims includes, but is not limited to, all individual, joint, retirement, business or trust accounts with Respondent that were opened with new account agreements executed by any or all Claimants named above including, but not limited to account numbers ACH-009571, AIR-002801 and ACH-517020.

**EXHIBIT " A "**

misconduct as identified herein.

**The Parties**

At all times material hereto, Claimants were residents of the State of Florida when they held investment accounts with Pacvest and/or Advisors Capital. Certain purchases and sales of securities were made in those accounts by Respondents as fiduciaries and agents of Claimants.

Upon information and belief, Pacvest: (1) is a corporation qualified to do business and is doing business in Florida; (2) is a securities broker/dealer registered with the Securities & Exchange Commission and the Florida Department of Banking and Finance, Division of Securities; and (3) maintains a membership in the New York Stock Exchange and the NASD. At all times relevant hereto, Claimant maintained account(s) with Pacvest and/or Advisors Capital, which are firms that conduct securities transactions within the State of Florida.

Upon information and belief, Advisors Capital: (1) is a corporation qualified to do business and is doing business in Florida; (2) is an investment advisory firm registered with the Securities & Exchange Commission and the Florida Department of Banking and Finance, Division of Securities; and (3) maintains an NASD membership. At all times relevant hereto, Claimant maintained account(s) with Pacvest and/or Advisors Capital, which are firms that conduct securities transactions within the State of Florida.

At times relevant hereto, the financial advisors were registered NASD members, employed by and under the control of Pacvest and Advisors Capital. As such, Pacvest and Advisors Capital are liable for the conduct of their employees by virtue of the doctrines of *respondeat superior* and vicarious liability.

Respondents Kornfeld and Mann have held their securities licenses with Respondent PacVest Associates, Inc. since 1999[2] and 1993, respectively. Mann has been licensed as a registered investment adviser with Respondent Advisors Capital since 1986.

Upon information and belief, Robert Mann was, at all times relevant to the misconduct described herein, a controlling shareholder and the President of PacVest and Advisors Capital[3].

As a control person of Pacvest and Advisors Capital, Mann is liable for Respondents' misconduct. Moreover, as an officer and control person of Pacvest and Advisors Capital, Mann is liable for the conduct of Barry Kornfeld by virtue of the doctrines of *respondeat superior* and vicarious liability.

**Jurisdiction, Situs, and Choice of Law**

This case is eligible for submission to this arbitration forum by virtue of the Customer Agreements and Rule 10100, et seq., of the NASD Code of Arbitration Procedure.

The situs is appropriate in Boca Raton, Florida (the Southeast division of the NASD) which is the hearing location nearest to where Claimants resided (a) when certain wrongs perpetrated herein occurred, (b) when certain trading authorizations were given, (c) when the causes of action accrued, and (d) where some of the relevant witnesses reside.

The proceeding should be governed by the applicable industry rules and regulations (NYSE, NASD, etc.) as interpreted and implemented by Florida statutory and

[2] Per NASD CRD records, Kornfeld was "permitted to resign" from Pacvest in or about June 2001 as a result of an internal investigation into misconduct including forgery of insurance certificates.

[3] Mr. Mann's status as an officer and controlling shareholder of PacVest and Advisors Capital is prominently mentioned on Advisors Capital's website, www.advisorscapital.com/ourteam/index.html.

common law, and because of the strong public policy the Florida legislature has expressed in protecting its residents from securities fraud.

**Statement of Facts**[4]

Claimants Steven and Janet Goldstein invested approximately $113,616.48 with Respondents. Respondents represented that they had purchased an insurance policy which guaranteed the principal their clients invested. Respondents failed in its duties to Claimants and as a result, Claimants have lost a significant amount of their principal.

Claimants demand rescission of the investments that are the subject of this claim, or in the alternative, an award granting Claimants damages for the losses suffered by Claimants as a result of their "investment" in Respondents' "guaranteed" program[5].

Respondents recommended that Claimants invest in their MarketShield Mutual Fund Program. Respondents represented that this program was fully guaranteed and expressly stated that Claimants could not lose their principal by investing in this program. Claimants are unsophisticated investors and believed Respondents' assurances and promises. Based on Respondents' representations, promises and assurances, Claimants invested approximately $114,000.00 with Respondents.

Respondents have repeatedly represented, both orally and in writing, that Claimants' investment was safe and protected from loss. Clearly, these representations were false and misleading, as the investments sold to Claimants by Respondents were not

---

[4] Prior to filing this claim, Claimants requested, among other things, copies of all account statements for Claimants' accounts. However, Respondent refused to produce those documents even though the documents requested are all discoverable under NASD Notice to Members 99-90. Therefore, some of the numbers and information that is being presented in this claim may not be exact and are approximated and Claimants reserve the right to amend this Claim if needed once all of the documents and information are obtained and evaluated.

[5] See Exhibit 1: November 9, 2000 letter from Respondents.

only unsafe and risky; the investments have lost a substantial percentage since Claimants purchased them.

Investor Capital's Form ADV, Uniform Application for Investment Adviser Registration, clearly states that "Clients who invest in certain mutual funds may obtain from Registrant [Investors Capital] a warranty that Registrant's risk management strategy will not result in a loss to the client's accounts." Claimants did obtain this warranty, and provided valuable consideration to Respondents (in the form of considerable fees) for this benefit. Respondents failed to honor the guarantee of Claimants' accounts, represented to Claimants by Respondents. Respondents breached the contract they entered into with Claimants and are liable for the losses Claimants suffered as a result[6].

Claimants signed a valid and enforceable contract with Respondents which provided for the return of a minimum of 100% of the funds Claimants entrusted to Respondents after a five year period of time. Respondents failed to honor this contract. The facts, and the law, are clear as to Respondents' liability to Claimants for their losses. As a direct and proximate result of Respondents' misconduct, Claimants have suffered losses of approximately $100,000.00.

Respondents failed to perform the necessary due diligence to ensure the safety of this market guarantee. Even when faced with red flags regarding the impropriety of this insurance scam, Respondents' only reaction was to boost Claimants' charges[7].

---

[6] Although it appears that Respondents did purchase a policy through Cumberland Insurance, Cumberland is now in receivership. However, Respondents are not the victims here and are responsible for the losses Claimants have suffered.

[7] See Exhibit 2: Letter from Mann giving notice of an increase in the advisory fee Respondents charged Claimants.

## Respondents Breached the Fiduciary Duty Owed to Claimants

The elements of a cause of action for breach of fiduciary duty under Florida law are: (1) the existence of a fiduciary duty owed to Claimants by Respondents; (2) the breach of that duty by Respondents; (3) proximately causing (4) damages to Claimant. Gracey v. Eaker, 837 So. 2d 348, 353 (Fla. 2002).

In the instant case, Respondents' representations, assurances and promises, made by both the financial advisor and the firm through their advertising and marketing campaigns, created the consideration precedent to Claimants' agreement to entrust their savings to Respondents. Thus, a fiduciary relationship was created at the time Claimants opened investment accounts with Respondents and survived for the life of the relationship.

Respondents' recommendation and implementation of an unsuitable and risky investment strategy constitutes a breach of that duty to Claimants. Clearly, the losses suffered by Claimants were a direct and proximate result of following Respondent's negligent investment advice. Lastly, the losses suffered by Claimants are indisputable and are evidenced by a full and complete accounting of the activity in Claimants' accounts. In conclusion, Claimants' claim for damages sustained as a result of Respondents' breach of their fiduciary duty to Claimants must be sustained as both the facts, and the law, support it.

## Conclusion

Respondents sold Claimants unsuitable investments. Respondents misrepresented the safety of their investment strategy. Respondents assured Claimants that their money was invested in a program that was "insured" and "guaranteed," although it clearly was not. Claimants purchased, and held, the investments in question as a direct result of

Respondents' misrepresentations and omissions of material facts. Clearly, Respondents are liable to Claimants for the losses Claimants have suffered as a result.

Pacvest and Advisors Capital were negligent in their supervision, retention and hiring of their employees. Due to Respondents' misconduct, Claimants have suffered losses of approximately $100,000.00.

**Violations of Law**

Respondents have violated industry rules, including but not limited to the NYSE's "Know your customer" standard (Rule 405) and the NASD's customer suitability standard (Rule 2310). Respondents breached the contract that was entered into between Claimants and Respondents. Respondents and the financial advisors also breached the fiduciary duty that a securities firm and its employees/agents owe to their clients.

Moreover, the account(s) at issue were handled negligently. Pacvest, Advisors Capital and Robert Mann, as the control person of both firms, were negligent in their hiring, retention and supervision of their employees.

**DAMAGES REQUESTED**

For the misconduct identified herein and which the evidence and testimony will support at the Final Hearings, Claimants demand an award against Respondents, jointly and severally, for:

(A) compensatory damages of approximately $100,000.00;

(B) interest at the legal rate from the date of purchase or reasonable market return;

(C) rescission;

(D) punitive damages;

(E) the costs of this proceeding; and for such other relief as is just and proper.

Respectfully submitted by:

BLUM & SILVER, LLP
Attorneys for Claimants
12540 W. Atlantic Blvd.
Coral Springs, FL 33071
Telephone: (954) 255-8181
Facsimile: (954) 255-8175

By:_______________________ Date: 8/15/05

DARREN C. BLUM
Fla. Bar No. 087173
SCOTT L. SILVER
Fla. Bar No. 095631

# EXHIBIT 1

**Blum & Silver, LLP**
12540 W. Atlantic Blvd.
Coral Springs, FL 33071
Phone: (954) 255-8181
Fax: (954) 255-8175

KB
FINANCIAL PARTNERS

*A Registered Investment Advisor*

*Barry Kornfeld*
*President*

*Lloyd Breuer*
*Vice President*

*800 Corporate Drive*
*Suite 220*
*Fort Lauderdale*
*Florida 33334-3618*

*954-491-5515*
*800-457-3650*
*Fax: 954-491-5045*
*e-mail: kbfp@aol.com*

November 9, 2000

Mr. Steven C. Goldstein
11710 NW 29th Str.
Sunrise, FL 33323-1606

**RE: National Financial Services Corporation–**
**Warranted Account**
**Account #ACH-517020**

Dear Steven:

Congratulations, your account is now warranted for $ 104,234.64, locking in your profit over a new, five-year term. In essence, we cancelled your account and created a new account. The date of this upgrade is 7-17-00. You received credit for the unused portion of your previous advisory fee and your account was debited for the difference of $ 1,845.06.

Your new insurance certificate reflecting your new warranted amount and effective date is enclosed.

As always, we appreciate the trust and confidence that you have placed in us. The ability to lock in your gains is a value-added benefit for you.

Sincerely,

Lloyd Breuer

LB/ik

CC: Advisor's Capital

# EXHIBIT 2

**Blum & Silver, LLP**
12540 W. Atlantic Blvd.
Coral Springs, FL 33071
Phone: (954) 255-8181
Fax: (954) 255-8175

# Important Notice Concerning Your Warranted Managed Account !

ADVISOR'S CAPITAL
Investments, Inc.

Last year Advisor's Capital Investments, Inc. experienced a loss of $200,497. The major contributing factor was that ACI pays 1% of your insured amount to Cumberland Casualty & Surety Company. You pay ACI on the current value of your account. As a key executive and largest shareholder, I sacrificed over 90% of my salary last year and did not take any commission compensation. I sold my investments and borrowed against my profit sharing assets to cover the deficiency and paid the insurance bill. In 2002, our fee revenue will be reduced on individual accounts from 20 to 50%, but the Cumberland bill will stay the same. I no longer have any resources to draw on to make up the difference.

Advisor's Capital Investments, Inc. had focused on generating other profitable business to help cover this insurance deficit. Our efforts have made a contribution but are not sufficient.

If Advisor's Capital Investments, Inc. fails, then the management will not continue and the insurer will not pay.

The reason for our problem is that you pay us on the asset value and we pay the insurance on the insured value.

Our proposed solution is to ask you to execute a contract amendment, which will increase the advisory fee to 3% of assets for 2002 through the warranty maturity date. If your fee is withdrawn from your account, our insurer will cover the entire 3% fee so your warranty value will not be reduced. I believe this adjustment will enable us to overcome the problem.

Originally, the warranty account cost was supposed to have been 3% per year. Our marketers reduced the fee to increase their business. No one contemplated the severity of the stock market decline, or the length of it.

Enclosed, please find our agreement for your account(s). You must realize that if we could absorb this problem, we would not ask you to work with us on this issue. We cannot afford to miss a payment to our insurers for even one day, because they look for excuses to cancel our coverage.

You may call me at 1-800-397-0722 to ask questions. Since this letter is going out to all clients who are paying less than 3% per year it is likely that our phones will be very busy for a period.

I have enclosed our ADV, which has a year-end balance sheet so that you can clearly understand our position. $200,000 of our liabilities is for legal bills. The rest of our payables are current. The attorneys have been paid at an earlier date and have not been hostile to us in collecting the balance.

Our business is becoming stronger. This change of fee to 3% will not cover the insurance payment deficiency in its entirety, but if our clients accept this proposal, I am confident our company will be able to make up the differential.

Sincerely,

Robert K. Mann
President

328 South Military Trail
Deerfield Beach, FL 33442
954-420-0780
Fax 954-725-4579

17 Tripp Road
Woodstock, CT 06281
800-397-0722
Fax 860-928-1831

Securities offered through PacVest Associates, Inc. Member NASD/SIPC